**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**ALISH JIWANI,**

**Plaintiff,**

**v.**

**DIRECTOR OF UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,**

**Defendant.**

**CIVIL ACTION FILE**

**NO. 1:25-CV-2847-MHC**

# ORDER

This case comes before the Court on Defendant's unopposed Motion to Dismiss [Doc. 7].

## I. BACKGROUND[1]

Plaintiff Alish Jiwani is a citizen of India residing in Tucker, Georgia. Compl. ¶¶ 1, 8. Plaintiff filed the above-styled action on May 21, 2025, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), seeking an order

---

[1] Because this case is before the Court on Defendant's Motion to Dismiss, the facts are presented as alleged in Plaintiff's Pro Se Complaint ("Compl.") [Doc. 1]. See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

compelling the United States Citizenship and Immigration Services ("USCIS") to (1) issue a bona fide determination on his U-Visa application "within 14 days," and (2) issue a decision on his corresponding employment authorization application "within 14 days of such decision [on his U-Visa application]." Id. at 1, ¶¶ 5, 108.

### A. Statutory and Regulatory Background

Congress established the "U-Visa" program as a part of the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, 114 Stat. 1464, which amended the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq.* ("INA"). See 8 U.S.C. § 1101(a)(15)(U). The "U-Visa" program garners its name from the subparagraph at which it is codified—8 U.S.C. § 1101(a)(15)(U). Its purpose is to "strengthen the ability of law enforcement agencies to detect, investigate and prosecute cases" by encouraging undocumented victims of crimes to step forward and cooperate with law enforcement, and thereby improve public safety. Victims of Trafficking and Violence Protection Act of 2000, H.R. 3244, 106th Cong. § 1513(a)(2) (2000). In exchange for their cooperation, the undocumented aliens are permitted to apply for temporary resident status and authorization to work lawfully in the United States. 8 U.S.C. § 1184(p).

An alien may be entitled to U-Visa status if

> (I) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity . . .;

> (II) the alien . . . possesses information concerning criminal activity . . .;
>
> (III) the alien . . . has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity . . .; and
>
> (IV) the criminal activity . . . violated the laws of the United States or occurred in the United States . . ..

8 U.S.C. § 1101(a)(15)(U)(i); 8 C.F.R. § 214.14(b).

The INA charges the Secretary of the Department of Homeland Security with the duty to "establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under" the INA. 8 U.S.C. § 1103(a)(3). The Secretary has in turn delegated much of this authority to administer immigration programs to USCIS. See 8 C.F.R. § 2.1. Administration of the U-Visa program is among USCIS's delegated responsibilities and the regulations specifically give USCIS "sole jurisdiction over all petitions for U nonimmigrant status." 8 C.F.R. § 214.14(c)(1); see also L.D.G. v. Holder, 744 F.3d 1022, 1024 (7th Cir. 2014) ("The decision whether to grant a U Visa is statutorily committed to the discretion of the Secretary of Homeland Security . . .

and is exercised through USCIS, an office within the Department of Homeland Security (DHS).") (internal citation omitted).

To apply for a U-Visa, an applicant must submit an I-918 Petition for U Nonimmigrant Status as well as a U-Visa certification from a certifying agency stating that the foreign national possesses important information about criminal activity and will cooperate with the investigation or prosecution. 8 C.F.R. § 14.14(c)(1), (c)(2)(i). USCIS processes these applications in the order they are filed. 8 C.F.R. § 214.14(d)(2). USCIS regulations provide that when a U-Visa application is submitted, the agency will complete a "de novo review of the petition and evidence," and "issue a written decision approving or denying Form I-918." 8 C.F.R. § 214.14(c)(5). "If USCIS determines that the petitioner has met the requirements for U-1 nonimmigrant status, USCIS will approve [the] Form I-918," 8 C.F.R. § 214.14(c)(5)(i), that person "is employment authorized incident to status," and USCIS will "automatically" issue an initial employment authorization document. 8 C.F.R. § 214.14(c)(7).

While an applicant awaits a determination from USCIS on the I-918 Application, USCIS has the authority to issue employment authorization to U-Visa applicants. 8 U.S.C. § 1184(p)(6) ("The Secretary [of Homeland Security] may

grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title.").

The relevant policy guidance provides that USCIS "implemented the Bona Fide Determination (BFD) process" pursuant to the statutory discretion it has "to provide employment authorization to aliens with pending, bona fide U nonimmigrant status petitions." See USCIS Policy Manual, Vol. 3, Part C, Ch. 5 – Bona Fide Determination Process, available at https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited March 18, 2026).[2] The policy describes the discretionary nature of the BFD process:

> During the BFD process, USCIS first determines whether a pending petition is bona fide. Second, USCIS, in its discretion, determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion. If USCIS grants the alien a Bona Fide Determination Employment Authorization Document (BFD EAD) as a result of the BFD process, USCIS then also exercises its discretion to grant that alien deferred action for the period of the BFD EAD.

Id.

[2] "[A] court may take judicial notice of government websites." Lamonte v. City of Hampton, 576 F. Supp. 3d 1314, 1327 (N.D. Ga. 2021) (citing Rule 201(b)(2) of the Federal Rules of Evidence (providing that courts may judicially notice facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")).

Even after USCIS reviews a U-Visa application and determines that the applicant is eligible, the U-Visa does not necessarily issue immediately because Congress has imposed a statutory cap of 10,000 new U-Visas per year. See 8 U.S.C. § 1184(p)(2)(A). Individuals who are determined by USCIS to be eligible for a U-Visa but do not receive one "due solely to the cap" are placed on a waitlist.[3] 8 C.F.R. § 214.14(d)(2). Applicants on the waitlist are eligible for employment authorization documents. Id. ("USCIS, in its discretion, may authorize employment for [applicants on the waitlist] and qualifying family members.").

An applicant who is approved for, and is issued a U-Visa, receives lawful nonimmigrant status for up to four years, with the potential for an extension. See 8 U.S.C. § 1184(p)(6). The U-Visa holder is also statutorily entitled to employment authorization incident to their status. See 8 U.S.C. § 1184(p)(3)(B) ("[T]he Attorney General shall, during the period those aliens are in lawful temporary resident status under [the U visa program], provide the aliens with employment

[3] Plaintiff's Complaint does not allege that he is eligible for the U-Visa waitlist, that Defendant unreasonably delayed placement on the U-Visa waitlist, nor does the Complaint mention the waitlist.

authorization."). USCIS regulations require this employment authorization to issue "automatically." 8 C.F.R. § 214.14(c)(7).

### B. Plaintiff's U-Visa Application

Plaintiff was the victim of an aggravated assault on January 13, 2024. Compl. ¶ 15. On October 24, 2024, Plaintiff filed a complete and signed I-918 Petition for U Nonimmigrant status, as well as a Form I-765 application for work authorization. Id. ¶¶ 16-19. At the time he filed the above-styled Complaint on May 21, 2025 (almost seven months later), USCIS had not taken any action on Plaintiff's applications. Id. ¶ 21.

### C. Plaintiff's Complaint

The crux of Plaintiff's Complaint is that USCIS has not issued any decision on his applications for a U-Visa and the corresponding employment authorization in the seven months that have passed since he filed them. See generally Compl. More specifically, Plaintiff complains that

> Congress required Defendant to make bona fide determinations and issue the related work authorization within 60 days; Defendant, however, claims it takes them 51.5 months to make such a decision. Such an adjudication delay is unreasonable under the Administrative Procedure Act and, therefore, this Court should compel Defendant to issue bona fide determinations within 14 days and issue work authorization within 14 days of such decision.

Id. at 1.[4] Plaintiff, proceeding pro se, has asserted one count pursuant to the APA, the first paragraph of which states that "USCIS has unreasonably delayed bona fide determinations ("BFDs") and BFD Employment Authorization Documents ("EADs") for all Plaintiffs and their qualifying relatives."[5] Id. ¶ 29. The precise contours of Plaintiff's APA claim are not clear as this is the sole paragraph in the cause of action section of the Complaint in which Plaintiff makes allegations that directly pertain to his case against Defendant.[6] The remainder of the paragraphs in

[4] Plaintiff does not cite any law to support his position that requires USCIS to make bona fide determinations and issue the related work authorization "within 60 days." The prior regulations governing USCIS's obligation to review employment authorization applications required USCIS to adjudicate the employment authorization application within 90 days from the date of receipt. 8 C.F.R. § 274a.13(d) (repeal effective January 17, 2017). However, the regulation was revised effective January 17, 2017, and no longer includes any specific time period for adjudication of applications for employment authorization applications.

[5] It is not clear why Plaintiff refers to "Plaintiffs" in the plural, or to whom he refers when referencing the "qualifying relatives." See also id. ¶ 43. The Complaint repeatedly refers to Plaintiffs in the plural and uses plural pronouns when referring to Plaintiff. See id. ¶¶ 9-12, 22, 29, 43, 74-76, 104.

[6] Plaintiff's Complaint does not otherwise include an explanation of the legal theory behind his APA claim. The grand majority of the allegations in Plaintiff's Complaint consist of conclusory legal statements that are more frequently used in legal briefs. For example, over half the allegations in Plaintiff's Complaint detail the six factors frequently used to analyze unreasonable delay claims brought pursuant to the APA. Compl. ¶¶ 49-104 (arguing that the six factors described in Telecommunications Rsch. & Action Ctr. v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984), weigh in favor of compelling agency action).

the cause of action section consist of legal conclusions in which Plaintiff contends that the Court has subject matter jurisdiction to hear Plaintiff's unreasonable delay APA claim because USCIS is required to make determinations as to whether applicants have filed bona fide applications for U-Visas and corresponding employment authorization. Id. ¶¶ 30-48. The singular focus on USCIS's alleged failure to issue an initial determination as to whether Plaintiff's U-Visa application was "bona fide" suggests that Plaintiff's APA unreasonable delay claim is limited to USCIS's alleged failure to issue a bona fide determination. This is consistent the Prayer for Relief in which Plaintiff seeks an order from this Court declaring USCIS's delay to be unreasonable, and requiring "USCIS to make bona fide determinations and decisions on the pending work authorization applications within 14 days." Id. ¶¶ 107-08.

## II. LEGAL STANDARDS

### A. Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), a claim may be dismissed for "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529

(11th Cir. 1990) (quotations and citation omitted) (alterations accepted). In such cases, the plaintiff is "afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." Id. (citing Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)[7]). A court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." See id. (quoting Williamson, 645 F.2d at 412-413); see also Lee-Lewis v. Kerry, No. 2:13-CV-80, 2016 WL 6647937, at *3 (S.D. Ga. Nov. 8, 2016) (holding that a court is "free to weigh the evidence" outside the pleadings).

On the other hand, "factual attacks . . . challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (internal quotations omitted). "Under a factual attack, the Court is free to weigh the facts and is not required to view them in the light most favorable to the plaintiff." Am. Ins. Co. v. Evercare Co., 699 F. Supp. 2d 1355, 1358 (N.D. Ga. 2010), aff'd per curiam, 430 F. App'x 795 (11th Cir. 2011) (citing Carmichael v.

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009)). When subject matter jurisdiction is challenged on a motion to dismiss, the party asserting jurisdiction bears the burden of proof. Cypress Ins. Co. v. Jesse Batten Farms, LLC, 662 F. Supp. 3d 1337, 1344 (N.D. Ga. 2023) (quoting Murphy v. Sec'y, U.S. Dep't of Army, 769 F. App'x 779, 782 (11th Cir. 2019)).

### B. Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading

are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III. ANALYSIS

Defendant argues (1) that the Court lacks jurisdiction over Plaintiff's claims in this case because determinations as to U-Visas and employment authorization are committed to agency discretion and there is no law compelling USCIS to make those determinations by a date certain, and (2) even if the Court did have subject matter jurisdiction, Plaintiff has failed to state a viable claim. Mot. to Dismiss at

10-30. Plaintiff did not respond to Defendant's Motion to Dismiss. Accordingly, the Court deems the motion unopposed. See Kramer v. Gwinnett Cnty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed"); LR 7.1B, NDGa. ("Failure to file a response shall indicate that there is no opposition to the motion."). Although Defendant's motion is deemed unopposed, the Court cannot grant it without considering the motion on its merits. See Giummo v. Olsen, 701 F. App'x 922, 925 (11th Cir. 2017) (reversing the district court's grant of unopposed motions to dismiss where the court "neither provided any reason why the plaintiffs' complaint failed to state a claim nor otherwise indicated that it had considered the sufficiency of the complaint's allegations.").

### A. This Court Does Not Have Subject Matter Jurisdiction to Adjudicate a Dispute Wherein Plaintiff Seeks to Compel the Government to Perform a Discretionary Act.

Under the APA, reviewing courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To state a claim for unreasonable delay, a party must allege "that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). The APA's judicial review provisions do not apply when

"agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); see also Hearst Radio v. F.C.C., 167 F.2d 225, 227 (D.C. Cir. 1948)("[The APA] does not provide judicial review for everything done by an administrative agency."). In fact, the APA "preclude[s] judicial review of discretionary agency functions." Hidalgo Canevaro v. Wolf, 540 F. Supp. 3d 1235, 1241 (N.D. Ga. 2021) (citing 5 U.S.C. § 701 (providing that the APA does not apply to "agency action is committed to agency discretion by law.")). Instead, under the APA, a claim alleging that an agency has unlawfully withheld or unreasonably delayed agency action "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton, 542 U.S. at 64. In other words, the APA "empowers a court only to compel an agency to perform a ministerial or non-discretionary act." Id. (internal punctuation and citation omitted).

The Court is without jurisdiction to hear Plaintiff's APA claim in this case because the action Plaintiff seeks to compel—the issuance of a bona fide determination "within 14 days" and the corresponding employment authorization "within 14 days" of the bona fide determination—is a matter left to governmental discretion. Plaintiff did not respond to Defendant's Motion to Dismiss, but in his Complaint, Plaintiff cites 5 U.S.C. § 555(b) for the proposition that "USCIS has a

duty under the Administrative Procedures Act ('APA') to make BFDs and EAD decisions for Plaintiff 'within a reasonable amount of time.'" Compl. ¶ 39.[8] However, 5 U.S.C. § 555(b) does not create a clear, non-discretionary duty for Defendant to act in this case.

Section 555(b) states in relevant part: "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). This section "merely restates a principle of good administration." Att'y Gen.'s Manual on the Admin. Proc. Act 65 (1947); see also Norton, 542 U.S. at 63 (finding the reasoning in the Attorney General's Manual on the APA persuasive). Section 555(b) does not create a duty to do any specific act, let alone a duty to issue a bona fide determination on Plaintiff's U-Visa application within a time certain. Sakhi v. Blinken, No. DLB-24-1376, 2025 WL 904141, at *5 (D. Md. Mar. 25, 2025) (finding that the "general directive" in Section 555(b) is not a "'specific, unequivocal command' from Congress to 'take a discrete agency

[8] Plaintiff's Complaint also asserts in conclusory fashion that adjudication of the U-Visa application is a "required and discrete action[]." Compl. ¶¶ 30-31, 40-42 (citing Norton, 542 U.S. at 63-68). Norton dealt with the use of off-road vehicles on certain land that is regulated by the government. It is inapplicable to this case dealing specifically with the adjudication of non-immigrant visas.

action.'") (quoting Norton, 542 U.S. at 63-64); Yaghoubnezhad v. Stufft, 734 F. Supp. 3d 87, 102 (D.D.C. 2024) ("While [Section 555(b)] implies that the agency, at some point, must reach a final decision, it does not speak specifically to the duties of consular officers, and it uses the open-ended phrase 'within a reasonable time.'"); Ali v. United States Dep't of State, 676 F. Supp. 3d 460, 470 (E.D.N.C. 2023) ("5 U.S.C. 555(b) do[es] not create specific, non-discretionary duties."); Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin., 587 F. Supp. 2d 1, 9 (D.D.C. 2008) ("[T]he general directive of Section 555(b) is a far cry from the discrete agency action that courts require when issuing an order compelling agency action unlawfully withheld or unreasonably delayed.") (citation and quotation omitted).

Because Plaintiff has failed to identify a clear, non-discretionary duty to act on the part of Defendant, Plaintiff's claim under the APA fails as a matter of law. See Hidalgo Canevaro, 540 F. Supp. 3d at 1243 (holding that the court had no subject matter jurisdiction to enter an order mandating action where there the government had no non-discretionary duty to act).

**B. The INA Strips This Court of Jurisdiction to Hear Plaintiff's Claim Regarding USCIS's Alleged Failure to Adjudicate His Bona Fide Status Within a Prescribed Period of Time.**

The INA strips this court of jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority

for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). This "jurisdiction-stripping statute," Bouarfa v. Mayorkas, 604 U.S. 6, 19 (2024), deprives courts of jurisdiction to review a case, "regardless of whether the judgment, decision, or action is made in removal proceedings." 8 U.S.C. § 1252(a)(2)(B)(ii). "The U visa statute is within the subchapter referred to in § 1252(a)(2)(B)(ii)."[9] Ayala v. Noem, 781 F. Supp. 3d 1187, 1197 (D.N.M. 2025) (citing 8 U.S.C. § 1184(p)). The relevant statute in this case, the statute conferring USCIS the authority to issue employment authorization to "bona fide" U Visa applicants, is discretionary, specifically stating that the DHS "Secretary may grant work authorization to any alien who has a pending, bona fide application for [U-Visa]." 8 U.S.C. § 1184(p)(6) (emphasis added). Because there is no clear, non-discretionary duty for Defendant to issue a bona fide determination on Plaintiff's U-visa application, § 1252(a)(2)(B)(ii) deprives the Court of jurisdiction to compel adjudication on his bona fide determination status.

---

[9] "[T]his subchapter" refers to Title 8, Chapter 12, Subchapter II, of the United States Code, codified at 8 U.S.C. §§ 1151-1381 and titled 'Immigration.'" Kucana v. Holder, 558 U.S. 233, 239 n.3 (2010).

The Fourth Circuit's reading of § 1184(p)(6) in Gonzalez v. Cuccinelli, 985 F.3d 357 (4th Cir. 2021) is informative of this precise issue. In Gonzalez, the Fourth Circuit found that § 1184(p)(6) does not require the federal government to do anything within a time certain. Id. at 366 (stating that "nothing in § 1184(p)(6) requires the agency to do anything."). The Fourth Circuit reasoned that "[i]n fact, the statute shows the agency action is discretionary: 'Secretary may grant work authorization.'" Id. (quoting 8 U.S.C. § 1184(p)(6)). In that case, the plaintiff argued that even though the ultimate grant of work authorization was discretionary, the agency is still required to make a preliminary bona fide determination in order to exercise that discretion. Id. The Fourth Circuit rejected this argument:

> Here, the term "pending, bona fide application" does not transform the discretionary "may" into a mandatory "shall." The decision to adjudicate remains discretionary. The term "pending, bona fide application" merely sets forth a prerequisite that the agency must satisfy if it chooses, in its discretion, to conduct an adjudication. For even if the agency finds an applicant meets the "pending, bona fide" standard, the agency may still deny her a work authorization. Nothing about the 'standard' guides its discretion in making that decision.
>
> ***
>
> Without a grant of authority from Congress, the agency has no power. In enacting the provision, Congress authorized, but did not require, the agency to grant work authorizations. Just as Congress does not have to exercise the powers delegated to it by the people, neither does the agency have to exercise its delegated powers where the text and structure of the relevant statute provide it with complete discretion. And the principle that "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions

> of foreign relations," I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) (internal quotation marks omitted), applies with particular force here, when Congress has conveyed that the agency has broad discretion over the granting of a benefit.

Id., 985 F.3d at 371. In other words, the discretion provided to the government over whether to grant work authorizations "suggests the same discretion in implementing the provision." Id. at 367; see also Patel v. Noem, No. 24-C-12143, 2025 WL 1489204, at *2 (N.D. Ill. May 23, 2025) ("Because the decision to grant an EAD is at USCIS's discretion, the decision to delay adjudicating an EAD application likewise is discretionary and barred by § 1252(a)(2)(B)(ii).").

> [T]he term "bona fide," which is integral to a BFD, is nowhere defined in the statutory scheme. Couched as that term is in § 1184(p)(6), which otherwise accords USCIS discretion, interpretation of that term is itself subject to USCIS's discretion. See, e.g., N-N v. Mayorkas, 540 F. Supp. 3d 240, 256-58 (E.D.N.Y. 2021) ("There is simply insufficient definitional content in the phrase 'bona fide' to compel agency action in the context of a statute that is framed, on its face, as discretionary.").

Patel v. Noem, 788 F. Supp. 3d 950, 955 (N.D. Ill. 2025).

As did the Fourth Circuit in Gonzalez, this Court holds that the term "'pending, bona fide application' merely sets forth a prerequisite that the agency must satisfy if it chooses, in its discretion, to conduct an adjudication." Gonzalez, 985 F.3d at 371.[10] Because the bona fide determination is discretionary,

[10] The Court acknowledges that there is a line of cases following the Sixth Circuit's "back-to-front" interpretation of 8 U.S.C. § 1184(p)(6), finding the statute to be

§ 1252(a)(2)(B)(ii) deprives this Court of jurisdiction to hear Plaintiff's claim. Many other courts, including courts in this district, follow this same line of reasoning, finding that § 1252(a)(2)(B)(ii) precludes them from exercising jurisdiction over claims of allegedly unreasonably delayed bona fide determinations. See, e.g., Prada Munoz v. Dir., U.S. Citizenship & Immigr. Servs., No. 8:25CV144, 2026 WL 322513, at *3 (D. Neb. Feb. 6, 2026) (holding that § 1252(a)(2)(B)(ii) bars the court from reviewing a case seeking to review USCIS's alleged unreasonable delay in making bona fide determinations of U-Visa applications and decisions on the pending work authorization applications); Patel, 788 F. Supp. 3d at 954 (holding that § 1252(a)(2)(B)(ii) stripped the court of jurisdiction to hear claim of unreasonable delay in making bona fide determination of U-Visa application); D'Cruz v. United States Citizenship & Immigration Servs., No. H-24-340, 2024 WL 4523307, at *4 (S.D. Tex. Oct. 9, 2024) (holding that "all BFD Policy actions taken in the course of the decision-making process -- Including

---

only "partly" discretionary and holding that "whether a pending application is 'bona fide' is a threshold determination that USCIS must make before any discretion enters the equation." Ayala, 781 F. Supp. 3d at 1199 (following Barrios Garcia v. U.S. Dep't of Homeland Sec., 25 F.4th 430, 445 (6th Cir. 2022) ("Because § 1184(p)(6) supplies only partly discretionary power to DHS, the statute is ambiguous enough to sustain the APA's presumption of judicial review. Thus, 5 U.S.C. § 701(a)(1) and 8 U.S.C. 1252(a)(2)(B)(ii) do not eliminate judicial review of Plaintiffs' work-authorization claims.").

the pace at which that process is undertaken, are unreviewable.") (internal quotation and citation omitted); Hasan v. Wolf, 550 F. Supp. 3d 1342, 1348 (N.D. Ga. 2021) (recognizing that 1252(a)(2)(B)(ii) precluded courts from reviewing discretionary decisions or actions of USCIS and holding that "[b]ecause U-Visa petitions are (1) committed to the discretion of USCIS, and (2) because there is no non-discretionary mandate that petitions be assessed in any given time, this Court lacks subject matter jurisdiction over Plaintiff's claims."); Hidalgo Canevaro, 540 F. Supp. 3d at 1243 ("This Court is without jurisdiction under the APA to review the pace at which UCSIS is considering whether Plaintiffs are bona fide petitioners eligible for work authorizations."); N-N, 540 F. Supp. 3d at 257-58 (E.D.N.Y. 2021) ("There is simply insufficient definitional content in the phrase 'bona fide' to compel agency action in the context of a statute that is framed, on its face, as discretionary."); Butanda v. Wolf, 516 F. Supp. 3d 1243, 1248 (D. Colo. 2021) ("The lack of a Congressionally mandated timeline and the concomitant grant of discretion to determine the "time" and "conditions" of admitting U-Visa applicants renders the pace of adjudication non-reviewable under Section 1252."); Ramires v. Wolf, No. 1:20-CV-203-KWR-SMV, 2020 WL 6146393, at *4 (D.N.M. Oct. 20, 2020) ("[T]here are no regulations implementing § 1184(p)(6) that require that

USCIS adjudicate whether to grant pending, bona fide applicants work authorization.").

### C. Plaintiff's Claim Regarding USCIS's Alleged Failure to Grant His Work Authorization is Non-Reviewable Under the INA.

As detailed above, judicial compulsion of agency action under the APA is limited to the enforcement of "specific, unequivocal command[s]" that the agency had "no discretion whatever" to deny. Norton, 542 U.S. at 63. Further, under 8 U.S.C. § 1252(a)(2)(B)(ii), challenges directed solely at an agency's discretionary determinations remain outside the scope of judicial review. The applicable statute at issue in this case states that "[t]he Secretary [of Homeland Security] may grant work authorization to any alien who has a pending, bona fide [U-Visa application]." 8 U.S.C. § 1184. "[T]he language of § 1884(p)(6) is facially discretionary." Hidalgo Canevaro, 540 F. Supp. 3d at 1243; Butanda, 516 F. Supp. 3d at 1250 ("The statutory provision at issue, 8 U.S.C. § 1184(p)(6), is discretionary on its face."). Because this statute clearly and unambiguously grants DHS discretionary authority to grant work authorization as a part of the U-Visa application, this Court is without jurisdiction to hear Plaintiff's claim challenging Defendant's alleged unreasonable delay in granting such authorization.

> That's it. The Secretary "may" grant work authorizations to those who have "pending, bona fide" applications. Thus, it is clear that the Secretary could grant Plaintiff a work authorization if his application is

> bona fide. But, there is nothing in the language to suggest that he must. There is certainly no "specific, unequivocal command" that he do so. And there is no limitation placed on his discretion not to grant a work authorization.

Patel v. Cissna, 400 F. Supp. 3d 1373, 1379 (M.D. Ga. 2019); see also Prada Munoz, 2026 WL 322513, at *3 ("[T]he decision to grant employment authorization to individuals with a pending U visa petition is a matter generally committed to the Secretary's discretion—one that courts lack jurisdiction to review."); Delgado v. Miller, No. 1:24-CV-03252-STV, 2025 WL 2513689, at *5 (D. Colo. Sept. 2, 2025) (finding that the court did not have jurisdiction to hear an unreasonable delay claim challenging the failure to provide employment authorization based on a finding that "EAD decisions are discretionary."); Hasan, 550 F. Supp. 3d at 1349 ("[T]his Court finds that Defendants are not required to implement or adjudicate pre-waiting-list work authorizations, making Defendants' failure to adjudicate Plaintiff's Application in a timely manner unreviewable."); Ramires, 2020 WL 6146393, at *5 ("Because it is purely a discretionary decision, the Court does not have jurisdiction to order work authorization or adjudication of work authorization pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii)."); Uranga v. U.S. Citizenship & Immigr. Servs., 490 F. Supp. 3d 86, 101 (D.D.C. 2020) ("[W]hile Congress gave the government the authority to issue EAD to those with pending,

bona fide U-visa applications, it did not require the agency to determine whether any particular applicant was eligible to receive them.").

### D. Plaintiff Has Failed to State a Claim Pursuant to the APA.

Even if Plaintiff had established that Defendant has a nondiscretionary duty to act on Plaintiff's U-Visa application and accompanying work authorization application, Plaintiff has not shown that Defendant's alleged failure to act has been "unreasonably delayed." See 5 U.S.C. § 706(1). To assess whether agency action has been "unreasonably delayed," courts look to the factors described in Telecommunications Rsch. & Action Ctr., (the "TRAC factors"), which are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed'.

750 F.2d at 80 (quotation marks and citations omitted). The Eleventh Circuit has not expressly adopted the TRAC factors, but other circuits and most lower courts have found the factors to be helpful in analyzing unreasonable delay claims against the federal government. See, e.g., Gonzalez, 985 F.3d at 375 (applying the TRAC factors); Hidalgo Canevaro, 540 F. Supp. 3d at 1244 (same); Cissna, 400 F. Supp. 3d at 1383 (same).

### 1. TRAC Factor 1

The first TRAC factor, whether the time the agency took to make a decision followed a "rule of reason," requires the Court to inquire "into whether there is any rhyme or reason for the Government's delay—in other words, whether the agency's response time is governed by an identifiable rationale." Palakuru v. Renaud, 521 F. Supp. 3d 46, 50-51 (D.D.C. 2021) (internal punctuation and citation omitted). Defendant represents that "USCIS generally conducts BFD reviews in filing-date order—a first-in, first-out basis." Def.'s Mot. to Dismiss at 24 (citing USCIS's website providing information about the I-918 Petition for U Nonimmigrant Status, found at https://www.uscis.gov/I-918 (last visited March 18, 2026)).[11]

---

[11] The USCIS website states that U-Visa applications are adjudicated "based on filing date order, with the oldest petitions receiving highest priority." Id. The website indicates that USCIS has met the statutory cap of 10,000 aliens who can be

Courts considering this policy, including courts in this district, have found that the "USCIS's process of 'first in, first out' to be a rule of reason." Anid Infosoft LLC v. Blinken, No. 1:22-CV-4721-TWT, 2023 WL 7312488, at *5 (N.D. Ga. Nov. 3, 2023); see also Hidalgo Canevaro, 540 F. Supp. 3d at 1244-45 (finding that the "first in, first out basis" for processing visa applications was a rule of reason); Muvvala v. Wolf, No. 20-cv-02423-CJN, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC factor."). "[A]ll of the district courts that have considered this question have concluded that the visa availability approach satisfies the rule of reason." Jain v. Renaud, No. 21-CV-03115-VKD, 2021 WL 2458356, at *4 (N.D. Cal. June 16, 2021).

Indeed, it would appear that if this Court were to grant Plaintiff's request to order the adjudication of Plaintiff's application in contravention of the first-in, first-out order, it would undermine this rule of reason by "simply moving all other petitioners back one space and producing no net gain." Alvarado v. Wolf, No.

---

issued U-Visas "every year since fiscal year 2010. When the new fiscal year begins on Oct. 1, 2025, we will resume approving eligible principal petitions for U-1 nonimmigrant status starting with petitions filed on or before April 30, 2017, prioritizing the oldest petitions." Id.

1:20-CV-04098-SCJ, 2021 WL 3828644, at *7 (N.D. Ga. Aug. 25, 2021) (internal punctuation and citation omitted). In fact, it would push Plaintiff's application that was submitted in October 2024 ahead of applicants who submitted their I-918 forms in 2017.

Whether Defendants' actions satisfy the rule of reason

> cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part, as we have said, upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.

Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Accordingly, it is informative—but not dispositive—that the delay between Plaintiff submitted his application (Oct. 24, 2024) and the present "delay" (approximately 17 months) is a shorter period of time than other immigration delays that were found to be reasonable. See, e.g., Palakuru, 521 F. Supp. 3d at 52 (finding that two-year delay in processing petition for visa was not unreasonable); Bagherian v. Pompeo, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (analyzing the TRAC factors and finding that the twenty-five-month delay was not unreasonable as a matter of law.); Ghadami v. United States Dep't of Homeland Sec., No. 19-00397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) ("[M]any courts evaluating similar delays have declined to find a two-year period to be

unreasonable as a matter of law."); Skalka v. Kelly, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (collecting cases concluding that delays of four and a half, five, and ten years in adjudicating a visa application were not unreasonable in different immigration contexts). "Indeed, the relatively short length of time plaintiff['s] application has been pending compared to the typical processing time for U-Visa applications . . . counsels against concluding USCIS failed to use its asserted rule of reason in this case." Patel v. Noem, No. 25 C 2859, 2025 WL 2164835, at *2 (N.D. Ill. July 25, 2025). Accordingly, this factor favors Defendants.

**2. TRAC Factor 2**

The second TRAC factor analyzes whether Congress provided any timetable or other indication of the speed with which it expects the agency to proceed. This factor is inapplicable here because Congress has not set a specific timetable for the processing of non-immigrant U-Visas. See Barrios Garcia, 25 F.4th at 453 ("[W]hen no statute sets a deadline for an agency action, the second TRAC factor is not relevant to an 'unreasonably delayed' analysis."). Because Congress has not given a timetable, it does not supply content for the rule of reason and is inapplicable to this case.

### 3. TRAC Factors 3 and 5

The third and fifth factors involve the nature of delays and any prejudice suffered therefrom. Plaintiff alleges in conclusory fashion that the delay in adjudicating his U-Visa application and work authorization application "is harmful," and that his "health and welfare . . . [have been] harmed." Compl. ¶¶ 23, 78. The Court empathizes with Plaintiff, and Plaintiff's interest in receiving a decision is "undeniably significant." Ghadami, 2020 WL 1308376, at *9. However, presumably every U-Visa applicant "is in the same position, and thus a juridically-sanctioned re-ordering of USCIS's process would net no prioritization of human welfare." Hidalgo Canevaro, 540 F. Supp. 3d at 1245.

Plaintiff's personal harm, presumably not being able to lawfully work and earn a livelihood, "alone is insufficient to compel USCIS to expedite determinations. Every delay in work authorization necessarily affects a petitioner's ability to earn a livelihood, and Plaintiff fails to differentiate the effect of delay upon his from the effect inflicted upon other petitioners waiting ahead of him for adjudication." Alvarado v. Dir., US Citizenship & Immigr. Servs., No. CIV-25-799-R, 2026 WL 413424, at *7 (W.D. Okla. Feb. 13, 2026) (internal punctuation accepted, citation omitted); see also Nayi v. Noem, 799 F. Supp. 3d 739, 749 (N.D. Ill. 2025) (finding that the plaintiffs' failure "to differentiate the

effect of delay upon them from the effect inflicted upon other [U-Visa] petitioners waiting ahead of them for adjudication" favored USCIS). Accordingly, the Court finds that these factors are neutral.

**4. TRAC Factor 4**

The fourth TRAC factor considers how expediting Plaintiff's U-Visa application might impede other agency priorities and "carries the greatest weight in many cases[.]" Milligan v. Pompeo, 502 F. Supp. 3d 302, 319 (D.D.C. 2020). Even when all other TRAC factors lie in a plaintiff's favor, courts have refused to grant relief where entering "a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." Mashpee Wampanoag Tribal Council, 336 F.3d at 1100 (alterations omitted). Defendant contends that the fourth factor favors it because granting Plaintiff's request would simply allow Plaintiff to move "to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief." Mot. to Dismiss at 28. Plaintiff has not pleaded any facts that would justify "shifting existing agency priorities," which his lawsuit would necessarily require. Mueller v. Blinken, 682 F. Supp. 3d 528, 540 (E.D. Va. 2023) (citation and quotation omitted).

> [I]f the court were to grant the relief Plaintiff seeks, it would divert resources from other processing priorities to Plaintiff's . . .

> application[]. The court cannot override the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.

Tekle v. Blinken, No. 21-CV-1655 (APM), 2022 WL 1288437, at *4 (D.D.C. Apr. 29, 2022) (quotation and citation omitted); see also Mueller, 682 F. Supp. 3d at 540 ("But what the Court can conclude at this stage, without discovery, is that a judicial order putting the plaintiffs at the head of the queue would simply move all others back one space and produce no net gain.") (internal punctuation and citation omitted).

Because entering an order expediting an adjudication of the bona fide determination and employment authorization on Plaintiff's U-Visa application would necessarily require a juridically-sanctioned re-ordering of USCIS's process and negatively affect competing U-Visas, the Court finds that the fourth factor weighs in favor of Defendants. See Mueller, 682 F. Supp. 3d at 540 ("Given that the plaintiff has pleaded no facts that would warrant such a reordering of the queue, a court order in Plaintiff's favor would shift existing agency priorities without justification. Thus, TRAC factor four weighs in favor of the Secretary.") (internal punctuation and citation omitted); see also Anid Infosoft LLC, 2023 WL 7312488, at *6 (finding that the fourth TRAC factor weighed against visa applicants because granting the requested relief "would simply cause other people

who have applied for . . . visas to suffer the same effects that the Plaintiffs have alleged here."); Alvarado, 2021 WL 3828644, at *8 (finding that the fourth TRAC factor disfavored plaintiffs where granting the requested relief would simply bump their applications to the front of the queue); Hidalgo Canevaro, 540 F. Supp. 3d at 1245 ("Thus, the effect of their requested relief would be to further delay "agency activities of a higher or competing priority"—eligibility determinations for applications "ahead" of Plaintiffs in line. The Court cannot justify prioritizing Plaintiffs' interests over the interests of these applicants.").

**5. TRAC Factor 6**

The final TRAC factor considers any alleged impropriety by the agency. Plaintiff alleges, "upon information and belief," that USCIS "has intentionally slowed adjudication BFD and EAD decisions. It has regularly adjudicated half as many applications as its resources would allow." Compl. ¶ 97. However, Plaintiff does not allege any facts to support this conclusory allegation and it is therefore not entitled to the presumption of validity. See Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc., 522 F. Supp. 3d 1202, 1209 (S.D. Fla. 2021) ("Although information and belief pleading can sometimes survive a motion to dismiss where a plaintiff alleges specific facts to support a claim, conclusory allegations made upon information and belief are not entitled to a presumption of truth, and

allegations stated upon information and belief that do not contain any factual support fail to meet the plausibility standard.") (internal punctuation and citation omitted). Because there is no non-conclusory allegation or indication of impropriety on the part of Defendants, the sixth factor is neutral.

In sum, TRAC factors one and four favor Defendants while the remaining factors are neutral or inapplicable. Accordingly, a careful balancing of all six factors together leads the Court to conclude that Defendant's alleged delay does not warrant judicial intervention and, accepting the veracity of the allegations in the Complaint, Plaintiff has failed to allege a plausible cause of action at this time under the APA because Defendant's alleged action has not been unlawfully withheld or unreasonably delayed.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss [Doc. 7] is **GRANTED**.

The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 18th day of March, 2026.

Mark H. Cohen

MARK H. COHEN
United States District Judge